(92 App. Div. 160.)

### KITCHING et al. v. BROWN.

(Supreme Court, Appellate Division, First Department. March 11, 1904.)

1. DEED—COVENANT AGAINST ERECTION OF TENEMENT HOUSE—CONSTRUCTION.
    In an action for an injunction against the owner of certain houses erected on land acquired under a covenant in a deed against the erection of any "tenement house" on the land conveyed, to prevent their occupancy, it appeared that defendant had constructed, on land fronting 153 feet, three modern apartment houses, seven stories high, with two apartments on each floor. The structures are high-class buildings of their kind; and have all the conveniences and appliances of the best order of such houses. Externally in their architecture they are of a character and appearance corresponding with first-class dwelling houses in the immediate neighborhood. The sum of $400,000 was expended for their erection. *Held,* that such buildings are not within the prohibition of the deed.

2. SAME—STATUTE—DEFINITION.
    Laws 1867, p. 2273, c. 908, § 17, defining a tenement house as every house, building, or portion thereof which is rented, leased, let, or hired to be occupied, or is occupied, as the home or residence of more than three families independently, doing their own cooking upon the premises, but limiting the definition to that particular act, has no application to the construction of a covenant in the deed against the erection of a tenement house on the land conveyed.
    Van Brunt, P. J., and McLaughlin, J., dissenting.

Appeal from Special Term, New York County.

Action by George Kitching and others against Kate C. Brown. From a judgment for defendant, plaintiffs appeal. Affirmed.

For former opinion, see 75 N. Y. Supp. 768.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

H. W. Hardon, for appellants.
H. Swain, for respondent.

PATTERSON, J. At the trial of this cause at Special Term (75 N. Y. Supp. 768) the complaint was dismissed upon the merits. The action was brought by owners of dwelling houses on the southerly side of Seventy-First street, west of West End avenue, in the borough of Manhattan, in the city of New York. Adjoining the premises owned by the plaintiffs, and to the west thereof, are situated lots of land belonging to the defendant, upon which apartment houses have been

¶ 1. See Covenants, vol. 14, Cent. Dig. § 169.

built.   Title to the lots, both of the plaintiffs and of the defendant, is derived from conveyances made by the executors of one Jacob Harsen. and all such lots are affected by a covenant, which is in the following words:

"And the said party of the second part, for himself, his heirs and assigns, doth hereby covenant to and with the said parties of the first part, their successors and assigns, and with the owners for the time being of the adjacent lots, jointly and severally, that neither the said party of the second part, nor his heirs nor assigns, shall or will, at any time hereafter erect any buildings within forty feet of the front of said premises, except of brick or stone, with roofs of slate or metal, and will not erect or permit upon any part of said premises any stable of any kind, coal yard, slaughter house, meat shop, tallow chandlery, steam engine, smith shop, forge, furnace, brass foundry, nail or other iron foundry, or any manufacturing of glass, gunpowder, starch, glue, varnish, vitriol, ink, petroleum or turpentine, or any cooper's, carpenter's or cabinet maker's shop, or any establishment for tanning, dressing, preparing or keeping skins, hides or leather, or any brewery, distillery, sugar refinery or bakery, or drinking or lager beer establishment, circus, menagerie or public show or exhibition of animals, railroad depot, railroad stable, car, engine or tenement house, or any other trade, manufactory, business or calling which may be in any way dangerous, noxious or offensive to the neighboring inhabitants, and that no building shall be erected upon said lands, or any of them, which shall contain any alley or entrance running through them for ingress or egress to rear buildings.   And it is declared that this covenant is a lien and runs with said lands, and binds all persons seized thereof for the time being."

The defendant's property has a frontage of 153 feet on Seventy-First street, and on the west immediately adjoins the Hudson River Railroad.   The defendant has constructed on her property three modern apartment houses, seven stories high, with two apartments on each floor.   Those structures are high-class apartment houses, and they have all the conveniences and all the appliances of the best order of such houses, and externally, in their architecture, they are of a character and appearance corresponding with the first-class dwelling houses in the immediate neighborhood.   They are costly buildings, the amount expended in their erection being about $400,000.   The houses are completed and ready for occupancy.   The sole question presented for consideration on this appeal is whether these structures of the defendant have been put up in violation of the covenant above quoted, and are of such a character as to entitle the plaintiffs to an injunction.

We have had a covenant identical with this before us in the case of White v. Collins Building & Construction Co., 82 App. Div. 1, 81 N. Y. Supp. 434, and there the question considered was the following: "Does the covenant against nuisances contained in the deed of  *  *  * surviving executors of the last will and testament of Jacob Harsen, M. D., deceased,  *  *  * dated June 10, 1873, prohibit the construction of a high-grade modern apartment house?"   In considering that case we endeavored to ascertain the intention of the parties in making the covenant, and the result was that we construed the words "tenement house" in connection with other interdicted structures and uses of a nature that would injure the general character of the neighborhood and make it inappropriate for the residence of refined and prosperous people, and it is said in the opinion that "it is common knowledge that in the year 1873, and prior to that time, modern apart-

ment houses were unknown in the city of New York." And it is further said:

"An apartment house, the erection of which is contemplated by the defendant, would clearly not be a use of the property which would be dangerous, noxious, or offensive to the neighboring inhabitants. What was clearly contemplated was that a tenement house as then known and in use in the city of New York should not be erected upon the property. The erection of a hotel was not prohibited, nor was the use of the property restricted to dwelling houses so constructed that one dwelling should be under each roof. The restriction was confined to one particular residential use, viz., a tenement house. The fact that hotels, boarding houses, or houses of that character, which were then common in New York, were not prohibited, would seem to show that the parties did not intend to restrict the premises to residences of a particular kind. What was contemplated was that the building of a tenement house, as then understood in New York, should not be allowed, but the modern apartment house is a building entirely distinct from what was then understood as a tenement house."

Those views resulted from the construction given to the covenant itself; but the case came before us in the form of a controversy submitted upon an agreed statement of facts, and there were in that statement concessions of fact which aided in the interpretation of the covenant, and which, to some extent, affected the decision of the court; but in the present case there is evidence of facts of the same character as those appearing, and which were regarded as important in the White Case. That case is authority for the conclusion that the restrictive covenant now under consideration against tenement houses is not to be construed as relating to such first-class apartment houses as the defendant has erected upon her premises, and it is also authority for the proposition that the definition of a tenement house as contained in chapter 908, p. 2273, Laws 1867, does not apply in this case, for that definition of a tenement house is restricted to that particular act.

The recent case of Levy v. Schreyer, 177 N. Y. 293, 69 N. E. 598, is supposed to be in conflict with these views; but we do not so regard it. There was something more in the covenant there than a restriction upon the grantee's right to erect or permit to be "erected or carried on" upon the premises a tenement house. There was also the positive covenant that the grantee would not erect any houses except private dwellings thereon, and that restriction is absent from this covenant. It was regarded as very material by the Court of Appeals. In that case the trial court found that the building erected was not a private residence or private dwelling, and it was upon all of the restrictive covenants that the Court of Appeals held that the plaintiff was entitled to an injunction against the use of the building as a tenement house or for any other purpose than that of a private dwelling or residence. So far as the present case is concerned, we have only the restriction against a tenement house to consider, and we do not regard Levy v. Schreyer as deciding that such costly, commodious, and attractive first-class apartment houses as have been erected by the defendant are to be regarded as tenement houses, within the intention or meaning of the parties, when title was taken under the deeds from Harsen's executors, which contained the restrictive covenant.

The judgment should be affirmed, with costs. All concur, except VAN BRUNT, P. J., and McLAUGHLIN, J., who dissent.